1  Simon Peter Serrano, WSBA No. 54769
   Silent Majority Foundation
2  5238 Outlet Dr.
   Pasco, WA 99301
3  (509) 567-7083
   pete@silentmajorityfoundation.org
4

5  Jennifer M. Vasquez, FLA. BAR NO. 71942 (*PRO HAC VICE* APPLICATION PENDING)
   Campbell Trohn Tamayo & Aranda P.A.
6  1701 South Florida Avenue
   Lakeland, FL 33813
7  (863) 686-0043, Fax (863) 616-1445
   j.vasquez@cttalaw.com
8

9

10                    UNITED STATES DISTRICT COURT

11               EASTERN DISTRICT OF WASHINGTON

12  Don J. Hand,                        )
13                        Plaintiff,    )    CASE NO.
                                        )
14  v.                                  )    COMPLAINT FOR DAMAGES
                                        )
15  BIOMARIN PHARMACEUTICALS            )
16  INC,                                )    JURY DEMANDED
                          Defendant.    )
17  _____    )

18

19                         **INTRODUCTION**

20

21      1.    Plaintiff Don J. Hand ("Mr. Hand") makes the following allegations of

22  religious   discrimination   for   his   complaint   against   Defendant   BioMarin

23  Pharmaceuticals, Inc.  ("Defendant BioMarin").

24

25

2.     In August 2021, Defendant BioMarin mandated that all of its employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").

3.     Certain BioMarin employees, including Plaintiff Mr. Hand, objected to receiving these vaccinations because of their sincerely-held religious beliefs.

4.     Mr. Hand, who was a "Senior Field Nurse Clinical Coordinator," requested a religious accommodation from Defendant BioMarin to exempt him from taking the Covid-19 vaccine so that he could continue employment.

5.     Defendant BioMarin denied Mr. Hand's request for a religious exemption and terminated his employment.

6.     Based on Defendant BioMarin's implementation of the Vaccine Mandate and Defendant's refusal to grant Mr. Hand's request for a religious exemption, instead terminating his employment, Mr. Hand asserts claims of religious discrimination pursuant to Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and the California Fair Employment and Housing Act, California Government Code § 12600 *et seq*. ("FEHA").

**JURISDICTION AND VENUE**

7.     Mr. Hand has fulfilled the jurisdictional requirements of Title VII, including filing of a charge of religious discrimination with the Equal Employment

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

Opportunity Commission ("EEOC") and receiving a right to sue letter from the EEOC, all in compliance with 42 U.S.C. § 2000e-5(f)(1). The EEOC right to sue letter is attached as **Exhibit A**.

8.     Upon filing the charge with the EEOC, which was dual-filed with the California Department of Fair Employment & Housing ("DFEH"), Mr. Hand fulfilled the jurisdiction requirements of the FEHA, pursuant to California Government Code Sec 12960, 12901, 12925. Mr. Hand's DFEH right to sue letter is attached as **Exhibit B**.

9.     This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, under 28 U.S.C. § 1331. This Court further has supplemental jurisdiction over Mr. Hand's state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court maintains personal jurisdiction over Defendant BioMarin because Defendant's contacts with the State of Washington and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice. Defendant BioMarin maintains offices in the State of Washington and this judicial district via its hiring of employees who work out of home offices in the State of Washington and this judicial district and serve

COMPLAINT - 3

BioMarin's customers, recipients of Defendant BioMarin's pharmaceutical products, who live in the State of Washington and this judicial district.

11. Defendant BioMarin is subject to the provisions of Title VII because Defendant BioMarin is engaged in commerce and employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. § 2000e (b).

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1-2) because Defendant BioMarin conducts business in this judicial district and a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

13. Plaintiff Don J. Hand is a former employee of Defendant BioMarin and resides in Spokane, Washington. He worked remotely out of his home office in Spokane, Washington, for the entire term of his employment with Defendant BioMarin.

14. Defendant BioMarin is a Delaware for-profit corporation, with a registered office at 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808. Defendant develops therapies for people with rare genetic diseases.

15. The "campus" for Defendant's North American Headquarters is located in San Rafael, California.

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

**FACTS**

16.    Plaintiff Hand is a Washington resident who worked for Defendant BioMarin from 2015 to 2021.

17.    Plaintiff Hand was hired in the position of Clinical Nurse Educator on or about February 2, 2015, was promoted to Senior Field Nurse Clinical Coordinator at some point during the time period 2016 to 2018, and performed satisfactorily throughout his employment, winning awards and accolades on several occasions for his work performance.

**Mr. Hand was a Spokane-based Employee Who Provided Field Support in the Pacific Northwest Region**

18.    Mr. Hand lived in Spokane, Washington, at the time of his hire in 2015 and worked remotely from his home office throughout the duration of his employment with Defendant BioMarin.  During the pandemic, his work was performed virtually.

19.    Defendant BioMarin supports clinics across the United States.  Each region is assigned a Clinical Coordinator.  Mr. Hand's region was the Pacific Northwest, which included Washington, Idaho, Montana, Oregon, Wyoming, Utah, Alaska, Nevada, and Northern California.  His job responsibilities centered upon providing patient support for patients receiving care from the Pacific Northwest Clinics.  He had performed his role for the 18 months of the pandemic virtually via online video-conferencing

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

platforms. Prior to the pandemic, he met in person with patients approximately four to five hours per week.

20.     During the pandemic, Mr. Hand's job required him to work from his computer, which included attending meetings via Zoom (or other web-based platform) with his patients and health care providers in the Pacific Northwest region.

21.     Mr. Hand's job description also included a requirement for a few "internal and professional meetings" each year. Since March 2020, those meetings had been conducted remotely.

22.     Upon information and belief, the January 2022 company-wide meeting that occurred after BioMarin terminated Plaintiff was initially planned to be conducted in person. But BioMarin ended up conducting that meeting virtually.

23.     As a Clinical Coordinator, Mr. Hand was paid a base salary by Defendant BioMarin and was eligible for a bonus in the forms of cash and stock.

### Defendant BioMarin created an online portal and required employees to upload their vaccination cards

24.     In a memo dated April 15, 2021, Defendant BioMarin communicated to its "U.S. BioMarin Colleagues" that all vaccinated employers were "required to upload a photo" of their vaccination cards to BioMarin's online portal by June 22, 2021. The memo also stated that a random drawing would be conducted among the compliant employees, with one employee receiving a cash award of $1,000.00 and forty other

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

employees receiving a gift card for $100.00. The memo cited the "benefits that vaccinated employees can expect to enjoy in both their personal and work lives" for the basis of BioMarin's inability to "**overstate the importance of getting vaccinated now**." (emphasis in original). The memo concluded, "If you are among the small minority of our employees who are not vaccinated, we strongly encourage you to get vaccinated ASAP," and then provided information about how to access "free vaccinations."

25.    On June 12, 2021, BioMarin sent via email a communication to its "Global BioMarin Colleagues," again urging that "small minority" of its employees who were still unvaccinated to join the club: "As we are increasingly seeing in the decisions from regional health authorities around the world, vaccinated individuals are enjoying greater freedoms and fewer restrictions than those who are unvaccinated." The communication reminded BioMarin's U.S. Employees that they were required to upload of photo of their vaccine card to the portal by June 22, 2021, noting, "To be clear, this is not a vaccine mandate."

26.    On June 25, 2021, Defendant BioMarin sent Mr. Hand an email with a link to a "survey," explaining that he was receiving the survey because "as of June 24," he was "not registered with WorkCare as a COVID vaccinated person." The email

COMPLAINT - 7

concluded, "If you don't respond by June 30, 2021, and until you attest that you have been vaccinated, BioMarin will consider you an unvaccinated individual."

27. Mr. Hand, seeing the writing on the wall and (correctly) predicting that even though BioMarin kept insisting that it was not currently mandating the Covid-19 Vaccine, it soon would, presented Defendant with his request for a religious exemption from taking the Covid-19 vaccine on July 27, 2021. Mr. Hand's request articulated his request for accommodation: to have his current role converted to a 100% virtual position, as he had "successfully conducted" his job responsibilities "remotely for the past 18 months." The basis for his accommodation request was that Mr. Hand is a Christian who follows the teachings of Jesus Christ and believes that taking the vaccine would be contrary to the Bible.

28. Defendant BioMarin continued to push the vaccination agenda, even though at least by July 20, 2021, it knew that the Covid-19 vaccine did not prevent infection or transmission. An email on that date from Peggy Ference, Executive Director of Field-based clinical support, with the subject line "Patient visits," stated that she was "highly recommending that you wear a mask, gloves, and where possible socially distance for your in-home patent visits. There are a number of breakthrough Covid cases occurring in *fully vaccinated people* and we do not want to unintentionally expose our patients to Covid." (emphasis added).

COMPLAINT - 8

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

29.     An email sent on August 3, 2021, from Kim Hillis, BioMarin Vice President of U.S. Field Operations, addressed to Mr. Hand, asked Mr. Hand to "officially notify HR via email of [his] vaccination status by Friday, August 6, 2021," which would "provide [BioMarin] a foundation by which to make necessary employment and business decisions to best serve" patients and health care providers.

### Defendant BioMarin Issued a Vaccine Mandate

30.     On August 31, 2021, Mr. Hand received notice via email from Defendant BioMarin that it was in fact requiring him to be vaccinated with a COVID-19 vaccine by October 15, 2021 ("Vaccine Mandate").

31.     Defendant BioMarin's Vaccine Mandate required all "Northern California Essential Onsite colleagues," all "U.S. Field colleagues," all "U.S. new hires," and any other employee desiring to visit "campus," including colleagues working offsite, to be "fully vaccinated against COVID-19 by October 1."

32.     The August 2021 Mandate also stated: "As a company laser-focused on engaging in scientific discovery to develop transformative therapies, it is not surprising that over 90 percent of our U.S. employees have already verified that they have been vaccinated."

33.     The reason given for requiring the vaccine for the remaining 10 percent of the U.S. employees was to "continue to protect the health of our colleagues, your

COMPLAINT - 9

families, our visitors, and those external stakeholders with whom we interact by adhering to the science on how to keep people safe."

34.  BioMarin never communicated to its employees the data or studies that provided the basis for that "science."

35.  Regarding the "Essential Onsite colleagues in Northern California," the Mandate stated that the vaccine requirement "takes into account that our Essential Onsite colleagues regularly work in very close quarters with one another, without the ability to keep sufficient distance, and *the majority of BioMarin COVID-19 cases in recent month have occurred within this population*." (emphasis added.)

36.  Mr. Hand was not an "Essential Onsite colleague."

37.  The Mandate also stated that, for the "U.S. Field colleagues," the vaccine requirement "takes into account that our U.S. Field colleagues meet regularly in-person with internal and external stakeholders, many of whom are caregivers for very vulnerable populations.  Moreover, for our Field colleagues, the rapidly increasing trend among hospital and other health care environments is to only allow vaccinated individuals to enter and meet with external stakeholders."  (emphasis added)

38.  Although Mr. Hand's role did include meeting an average of four to five hours per week with internal or external stakeholders or entering hospitals or clinics, his patients were not "medically vulnerable."  The patients have Lysosomal Storage

COMPLAINT - 10

Diseases ("LSD"), a rare genetic disorder that causes bone deformities and heart and lung problems, among other issues, but the immune system of LSD patients is not compromised.

39.     The August 2021 Mandate communication included an "FAQ" hyperlink with "information on how to request an exemption or deferral from the requirements for medical or religious reasons."

40.     Mr. Hand is a Christian who believes that taking a vaccine violates what the Bible commands; it violates his conscience, religiously and morally, to take the Covid-19 vaccine.

41.     Mr. Hand also has strongly-held beliefs against coerced injections of any drug – and especially experimental drugs.

42.     Because of his strongly held religious and moral beliefs against taking the Covid-19 vaccine, on July 27, 2021, Mr. Hand submitted his request for religious accommodation and exemption from taking the Covid-19 vaccine, as set forth above.

**Defendant BioMarin Denied Mr. Hand's Request
For Religious Accommodation**

43.     On September 13, 2021, BioMarin responded to Mr. Hand, denying his request, offering no accommodation, and informing him that if he did not receive a "final dose of the vaccination" by October 1, 2021, he would be terminated.

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

44.     Defendant insisted that Mr. Hand remaining "unvaccinated" would present a "health and safety threat" and "an undue burden to BioMarin." Rather than citing any actual studies that showed an unvaccinated person was more likely to transmit Covid-19 than a vaccinated person, or that Covid-19 vaccines had been proven to prevent transmission, Defendant BioMarin revealed its actual concern – business image. "[S]ending a caregiver and educator into these environments that may be perceived as not accepting the valid science, verified data, and validity of the FDA's approval process" would present a "high reputational risk" to BioMarin. There is no indication how this hypothetical risk might have materialized.

45.     Defendant BioMarin did not offer an alternative accommodation, such as permitting Mr. Hand to remain unvaccinated but continue to visit patients in person as needed, wearing a mask and maintaining social distancing, for example.

46.     Defendant BioMarin completely discounted the sincerity of Mr. Hand's religious belief and did not even attempt to make an accommodation despite the lack of any actual burden.

**Despite no undue hardship, Defendant BioMarin terminated Mr. Hand for his religious beliefs after he requested a religious accommodation**

47.     On or about October 2, 2021, Mr. Hand was terminated, despite working for Defendant BioMarin in a position that he had been conducting virtually and could

COMPLAINT - 12

have conducted in person but for Defendant BioMarin's misplaced faith that the vaccine would prevent transmission.

48.     Defendant terminated Mr. Hand because of his refusal to violate his personally-held religious beliefs by getting the Covid-19 vaccine.

49.     To the best of his knowledge, Defendant BioMarin did not grant any employee's request for religious exemption from the Covid-19 vaccination mandate.

50.     Defendant BioMarin treated vaccinated employees more favorably.  Per Mr. Hand's information and belief, Defendant BioMarin granted an accommodation request by at least one vaccinated employee (who had the same role – Clinical Coordinator – at BioMarin as Mr. Hand) who felt uncomfortable traveling and meeting other people in person (despite being vaccinated) to continue doing her job virtually.

51.     Permitting this vaccinated employee to continue to perform her job virtually demonstrates that it would not have been an undue hardship for Defendant BioMarin to permit Plaintiff Hand to continue to perform his job virtually.

52.     Mr. Hand lost not only his income and benefits but all of his stock options, which had been given to him as a bonus for his work performance.

53.     Mr. Hand has retained Campbell Trohn Tamayo & Aranda, P.A. to represent him in this litigation and has agreed to pay a reasonable fee for the firm's services.

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

# COUNT I

## RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e

54.     Plaintiff Don J. Hand restates and re-alleges the allegations of paragraphs 1 through 53 above.

55.     Defendant BioMarin is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

56.     Mr. Hand is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

57.     Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).

58.     "Religion" is defined as including "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

59.     The Equal Employment Opportunity Commission defines "religious practices" to "include all moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."  29 C.F.R. § 1605.1.

COMPLAINT - 14

60.   "[R]eligious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774-75 (2015).

61.   Defendant BioMarin violated Title VII when it terminated Mr. Hand because of his sincerely held religious beliefs and failed to provide him a reasonable religious accommodation.

62.   Mr. Hand was an outstanding employee and valued member of his team, winning several performance awards over the course of his employment with BioMarin.

63.   Pursuant to Defendant BioMarin's Vaccine Mandate, receiving the Covid-19 vaccine was a condition of his continued employment.

64.   Mr. Hand has a sincerely held religious belief that prevents him from receiving the Covid-19 vaccine.  Mr. Hand's beliefs arise under Christianity.

65.   Mr. Hand informed Defendant BioMarin of his belief.

66.   Defendant BioMarin could have easily granted Mr. Hand's request for religious accommodation, but Defendant BioMarin refused to do so based on BioMarin's perceived and hypothetical "reputational risk."

67.   Despite the utter lack of a hardship on Defendant BioMarin to accommodate the request for religious exemption, Mr. Hand was terminated after he refused Defendant BioMarin's efforts to force him to get the Covid-19 vaccine.

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

68.    Any health and safety concerns regarding Mr. Hand continuing in his duties as he had since 2018 as an unvaccinated person were at best hypothetical and unfounded.  After his termination, Mr. Hand was offered a position with a competitor global pharmaceutical company and has been employed with that company ever since without any issues whatsoever.

69.    In contrast, Defendant BioMarin granted accommodation requests that were not based on religion, including permitting at least one vaccinated employee to avoid travel.

70.    Granting accommodations for non-religious reasons to "compliant" employees and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

71.    Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

72.    Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

73. If Mr. Hand had set aside his religious beliefs and taken the Covid-19 vaccine, Defendant BioMarin would not have fired Mr. Hand. Thus, religion was a but-for cause of his termination.

74. In the alternative, religion was a motivating factor in Mr. Hand's termination.

75. Emails and calls by Mr. Hand's supervisors questioning why he would not take the vaccine and essentially urging him to "just take the vaccine" constitute direct evidence of discrimination in violation of Title VII.

76. Mr. Hand's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

77. Title VII prohibits Defendant BioMarin from scrutinizing what Defendant believes to be the sincerity of Mr. Hand's religious belief.

78. Title VII also prohibits Defendant BioMarin from scrutinizing whether Mr. Hand's exercise of his beliefs is logical or as consistent as Defendant BioMarin believes they should be.

79. Requests for reasonable accommodation must be considered based on their individual, particularized circumstances; any claim of undue hardship by the employer

COMPLAINT - 17

must be assessed on a case-by-case basis rather than through application of a blanket rule.

80.     Defendant BioMarin applied a uniform, blanket rule in rejecting Mr. Hand's request for accommodation.

81.     Defendant BioMarin's actions of urging Mr. Hand to take the vaccine against his religious beliefs, questioning the consistency of his religious beliefs, requiring him to enter his vaccine information into a company database, and portraying Mr. Hand's exercise of his religious beliefs as a reckless act that put his colleagues and patients in harm's way demonstrate that Defendant's actions were willful and malicious.

82.     As a direct result of Defendant BioMarin's discriminatory acts, Mr. Hand suffered a loss of employment, loss of income and stock options, loss of seniority, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in him favor and award him the following relief:

a.   Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Don J. Hand has suffered due to Defendant BioMarin's discriminatory acts;

COMPLAINT - 18

b. Compensatory damages representing Plaintiff Don J. Hand's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's retaliatory practices;

c. Punitive damages representing Plaintiff Don J. Hand's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's willful and malicious acts;

d. All costs and attorney fees incurred in litigating this action;

e. Pre- and post-judgment interest; and

f. Any other relief the Court deems just and proper.

## COUNT II

### RELIGIOUS DISCRIMINATION – DISPARATE IMPACT
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000e

83. Plaintiff Don J. Hand restates and re-alleges the allegations of paragraphs 1 through 53 above.

84. Defendant BioMarin is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

85. Mr. Hand is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

86. Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees . . . in any way which would deprive or tend

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(2); *see also* 42 U.S.C. § 2000e-2(k).

87.  "Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

88.  Mr. Hand was an outstanding employee and valued member of his team.

89.  Mr. Hand has a sincerely held religious belief that prevented him from receiving the Covid-19 vaccine. Mr. Hand's beliefs arise under Christianity.

90.  Pursuant to Defendant BioMarin's Vaccine Mandate, receiving the Covid-19 vaccine was a condition of his continued employment.

91.  Mr. Hand informed Defendant BioMarin of his belief and requested a religious exemption from the Vaccine Mandate – to be permitted to continue his job responsibilities without having to take the Covid-19 vaccine. Defendant BioMarin denied his request.

92.  Defendant BioMarin's Covid-19 Vaccine Mandate adversely classified religious employees like Mr. Hand who hold religious beliefs against receiving the Covid-19 vaccine.

93.  Defendant BioMarin violated Title VII when it placed Mr. Hand into a disfavored class by issuing its Covid-19 Vaccine Mandate, when it failed to approve his

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

reasonable request for accommodation or attempt in any way to accommodate his religious beliefs, and when it terminated his employment.

94.     Any health and safety concerns regarding Mr. Hand continuing in his duties as he had since 2018 as an unvaccinated person were at best hypothetical and unfounded.  After Defendant BioMarin terminated him, he was offered a position with a different global pharmaceutical company and has been employed with that company ever since without any issues whatsoever.

95.     Defendant BioMarin could have simply granted Mr. Hand's request for religious accommodation, but Defendant BioMarin rejected the available alternatives, which had lesser discriminatory effects and would have been comparably as effective at serving Defendant BioMarin's business needs and rejected Mr. Hand's request for accommodation.

96.     Employees with religious objections to the Covid-19 vaccine and seeking religious exemptions from the Covid-19 vaccine were rendered unemployable by Defendant as a result of Defendant BioMarin's Vaccine Mandate.

97.     In contrast, Defendant BioMarin granted at least one employee's accommodation request that was not based on religion, including permitting that vaccinated employee to avoid travel and to continue to work virtually.

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

98.     Granting accommodations for non-religious reasons and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

99.     Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

100.    Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

101.    Despite the existence of alternatives with lesser discriminatory effects, Mr. Hand was terminated after he refused Defendant BioMarin's efforts to force him to get the Covid-19 vaccine.

102.    Mr. Hand's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

103.   Title VII prohibits Defendant BioMarin from scrutinizing what Defendant believes to be the sincerity of Mr. Hand's religious belief.

104.   Title VII also prohibits Defendant BioMarin from scrutinizing whether Mr. Hand's exercise of his beliefs is logical or as consistent as Defendant BioMarin believes they should be.

105.   Defendant BioMarin's actions of urging Mr. Hand to take the vaccine against his religious beliefs, questioning the consistency of his religious beliefs, requiring him to enter his vaccine information into a company database, and portraying Mr. Hand's exercise of his religious beliefs as a reckless act that put his colleagues and patients in harm's way demonstrate that Defendant's actions were willful and malicious.

106.   As a direct result of Defendant BioMarin's discriminatory Vaccine Mandate, Mr. Hand suffered a loss of employment, loss of income and stock options, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and award him the following relief:

   a.   Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

with interest on said amounts that Plaintiff Don J. Hand has suffered due to Defendant BioMarin's discriminatory acts;

b. Compensatory damages representing Plaintiff Don J. Hand's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's retaliatory practices;

c. Punitive damages representing Plaintiff Don J. Hand's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's willful and malicious acts;

d. All costs and attorney fees incurred in litigating this action;

e. Pre- and post-judgment interest; and

f. Any other relief the Court deems just and proper.

## COUNT III

### RELIGIOUS DISCRIMINATION IN VIOLATION OF
### THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### GOVERNMENT CODE § 12940 *et seq.*

107. Plaintiff Don Hand restates and re-alleges the allegations of paragraphs 1 through 53 above.

108. This is an action against Defendant BioMarin pursuant to the California Fair Employment and Housing Act, California Government Code § 12940 *et seq.*

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

109.   Defendant BioMarin, discriminated against Mr. Hand with regard to the term, conditions, and privileges of his employment because of Mr. Hand's religion, in violation of California Government Code § 12940.

110.   Despite the lack of any evidence that the Covid vaccine prevented transmissions, and despite Mr. Hand being employed in a position that he had been performing virtually during the pandemic and in any event did not require frequent patient contact (pre-pandemic average was four to five hours per week), Defendant BioMarin denied Mr. Hand's request for a religious exemption from its Vaccine Mandate.

111.   Defendant BioMarin granted an accommodation to at least one vaccinated employee by allowing that employee to avoid travel and continue appearing at meetings virtually.

112.   Defendant BioMarin's actions of urging Mr. Hand to take the vaccine against his religious beliefs, questioning the consistency of his religious beliefs, requiring him to enter his vaccine information into a company database, and portraying Mr. Hand's exercise of his religious beliefs as a reckless act that put his colleagues and patients in harm's way demonstrate that Defendant's actions were willful and malicious.

113.   As a direct result of Defendant BioMarin's discriminatory acts, Mr. Hand suffered a loss of employment, loss of income – including salary in addition to loss of

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

bonus and loss of stock options, loss of unemployment benefits, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff Don J. Hand requests that the Court enter judgment in his favor and award him the following relief:

    a.  Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Don J. Hand has suffered due to Defendant BioMarin's discriminatory acts;

    b.  Compensatory damages representing Plaintiff Don Hand's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's discriminatory practices;

    c.  Punitive damages representing Plaintiff Don Hand's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's willful and malicious acts;

    d.  All costs and attorney fees incurred in litigating this action;

    e.  Pre- and post-judgment interest; and

    f.  Any other relief the Court deems just and proper.

SILENT MAJORITY FOUNDATION
5238 Outlet Dr.
Pasco, WA 99301

# JURY TRIAL DEMAND

Mr. Hand demands trial by jury on all issues so triable.

**DATED** this 21st day of November 2022.

**SILENT MAJORITY FOUNDATION**

/s/ Simon Peter Serrano
Simon Peter Serrano, WSBA No. 54769
5238 Outlet Dr.
Pasco, WA 99301
Tel: (509) 567-7083
pete@silentmajorityfoundation.org

**CAMPBELL TROHN
TAMAYO & ARANDA, P.A.**

/s/ Jennifer Vasquez
Jennifer M. Vasquez, Fla. Bar No. 71942
1701 South Florida Avenue
Lakeland, FL 33803
Tel: (863) 686-0043
Fax: (863) 616-1445
j.vasquez@cttalaw.com
*Pro Hac Vice* Application Pending

*Counsel for Plaintiffs*

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**San Francisco District Office**
450 Golden Gate Avenue 5 West, PO Box 36025
San Francisco, California 94102
(650) 684-0910
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)
Issued On: **September 6, 2022**

To: Mr. Don J. Hand
3704 S. Brighton Lane
Spokane, WA 99223
**Charge No: 550-2021-01921**

EEOC Representative and Email:  David Brannen
Senior Investigator
DAVID.BRANNEN@EEOC.GOV

### DISMISSAL OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge **550-2021-01921**.

On Behalf of the Commission:

Digitally signed by Rosa M. Salazar
DN: cn=Rosa M. Salazar, o=U.S. Equal
Employment Opportunity Commission,
ou=Enforcement Manager, San Francisco District
Office, email=rosa.salazar@eeoc.gov, c=US
Date: 2022.09.06 10:02:45 -07'00'

-For-  Nancy Sienko
District Director

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court <u>under Federal law</u>. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.  Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number **550-2021-01921** to the District Director at the following address:

U.S. Equal Employment Opportunity Commission
San Francisco District Office
Nancy Sienko
District Director
450 Golden Gate Avenue 5 West, PO Box 36025
San Francisco, CA 94102.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT B



STATE OF CALIFORNIA | State and Consumer Services Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove, CA | 95758
800-884-1684 | Videophone for the DEAF 916-226-5285
www.dfeh.ca.gov | e-mail: contact.center@dfeh.ca.gov

EEOC Number:    550-2021-01921C

Case Name:      Don J. Hand vs. BIOMARIN PHARMACEUTICAL, INC

Filing Date:       Dec 06, 2021

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH), a state agency, and the United States Equal Employment Opportunity Commission (EEOC), a federal agency. The complaint will be filed in accordance with California Government Code section 12960. The notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact EEOC directly for any discussion of the complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your state Right to Sue notice. <u>This state Right to Sue Notice allows you to file a private lawsuit</u>. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above- referenced complaint. The lawsuit may be filed in a State of California Superior Court.

Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice or, pursuant to Government Code section 12965, subdivision (d)(2), 90 days from receipt of the <u>federal</u> right-to-sue letter from the EEOC, whichever is later. You should consult an attorney to determine with accuracy the date
by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

(Revised 11/2016)